## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01005-SCT

*ROBERT MARGERUM*

*v.*

*BUD'S MOBILE HOMES, INC., BELMONT HOMES, INC., AND GREEN POINT CREDIT*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/25/2001 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM W. DREHER, JR. |
| ATTORNEYS FOR APPELLEE: | JAMES L. FARRIOR, III |
| | DAVID MARK EATON |
| | DORRANCE AULTMAN |
| | THOMAS H. CASSELL, III |
| | JEFF RAWLINGS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 8/15/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/5/2002 |

**BEFORE PITTMAN, C.J., COBB AND CARLSON, JJ.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. Robert Margerum filed suit against Bud's Mobile Homes, Inc. (Bud's), Belmont Homes, Inc. (Belmont), and Green Point Credit (Green Point) in the Circuit Court of Pearl River County when several specially-ordered items to accompany his manufactured home purchase were not delivered and defects in materials and workmanship in the home were discovered. Green Point successfully compelled arbitration, and the arbitrator found in favor of Bud's, Belmont, and Green Point. Citing inaccuracies in the arbitrator's findings of fact and conclusions of law and complaining that Bud's and Belmont had not timely acted upon the arbitrator's original order, Margerum moved the trial court to vacate the arbitrator's final award. The court refused to do so and entered final judgment confirming the arbitrator's award.

## FACTS

¶2. Robert Margerum bought a new double-wide mobile home manufactured by Belmont Homes, Inc., from Bud's Mobile Homes, Inc., in May of 1998. He financed the purchase through a $54,462.20 loan provided by Green Point Credit. A mobile home different from the one he purchased was later delivered to Margerum, who accepted delivery. The home was a different color; various defects in manufacture and workmanship were noticed by Margerum; and a skirting for the home and a built-in stereo system-among other items-were never delivered as ordered. Margerum contacted Bud's to have the defects cured. Margerum was compensated for having the wrong colored home. When no attempt was made to correct the other various defects, Margerum stopped making the monthly payments on his loan.

¶3. In November of the same year, Margerum filed suit against Bud's, Belmont, and Green Point. Green Point moved the trial court to compel arbitration pursuant to the provisions of its financing agreement with Margerum, and the trial court granted the motion by an order agreed upon by all parties in September of 1999. Finally, in November of 2000, the arbitrator heard the arguments provided by both sides. Green Point was either not present for the whole meeting or did not attend at all. Initially, Margerum intended to abandon the mobile home, however, at the end of the hearing he said that he wanted to stay. The arbitrator, not knowing if an agreement could be worked out with Green Point concerning Margerum's request to stay, issued a handwritten opinion. The arbitrator's handwritten ruling reads in full as follows:

> I find for the Defendant. However; I am keeping jurisdiction of this case long enough to ensure that certain repairs are made to the Plaintiff's mobile home by the Defendant. In the event that repairs are not made in a timely manner, I reserve the right to allow the Plaintiff to revoke acceptance of the mobile home.

Shortly after the hearing, Margerum and Green Point reached an agreement that Margerum would resume current payments on the loan and the missed payments would be added to the end of the note.

¶4. Over two months had elapsed and no repairs had been made to the mobile home when Margerum sent a letter to the arbitrator asking him to enforce his reserved right to allow Margerum to revoke his acceptance of the mobile home. That January of 2001, Margerum also filed a motion to either set aside the arbitrator's order, withdraw from arbitration, or enforce the arbitrator's award. Responding to Margerum's January letter, the arbitrator signed a document entitled "Final Judgment" which awarded Green Point possession of the mobile home and ordered Margerum evicted unless he paid the arrearage of his loan with Green Point, the current month's payment, and Green Point's attorney's fees. Also, the arbitrator sent a letter to Margerum's attorney stating Margerum had not met his burden of proof at the arbitration hearing and had not reached an agreement with Green Point on the resumption of payments on the loan.[1] The letter states that there was no point in requiring Bud's and Belmont to complete repairs when the home would only be repossessed by Green Point.

¶5. In response to the motion to withdraw from arbitration, the trial court found the handwritten arbitration award needed clarification and ordered the arbitrator to file findings of fact and issue a clear award. The arbitrator did so in April of 2001, finding the defects cosmetic and ruling for the defendants once again. He also gave Green Point possession of the mobile home. Margerum filed a motion to vacate this award which the trial judge denied. In May, the trial court also denied Margerum's subsequent motion for additional findings of fact without a hearing after Margerum disputed the validity of the facts in the arbitrator's findings.

<u>ANALYSIS</u>

**I. WHETHER THE COURT ERRED IN FAILING TO SET ASIDE THE ARBITRATOR'S AWARD BECAUSE IT WAS SO IMPERFECTLY EXECUTED THAT A MUTUAL, FINAL, AND DEFINITE AWARD ON THE SUBJECT MATTER COULD NOT BE MADE.**

**II. WHETHER THE COURT ERRED IN FAILING TO SET ASIDE THE ARBITRATOR'S AWARD BECAUSE THE ARBITRATOR FAILED TO INCLUDE THE NECESSARY DOCUMENTS AS REQUIRED BY THE MISSISSIPPI CODE.**

¶6. "The only grounds for setting an arbitration award aside, or of modifying it, are prescribed by statute." *Hutto v. Jordan*, 204 Miss. 30, 39, 36 So. 2d 809, 810 (1948). The statute governing this arbitration is Miss. Code Ann. § 11-15-23 (1972). It reads in full:

> Any party complaining of an award may move the court to vacate the same upon any of the following grounds:
>
> (a) That such award was procured by corruption, fraud, or undue means;
>
> (b) That there was evident partiality or corruption on the part of the arbitrators, or any one of them;
>
> (c) That the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent or material to the controversy, or other misbehavior by which the rights of the party shall have been prejudiced;
>
> (d) That the arbitrators exceeded their powers, or that they so imperfectly executed them that a mutual, final, and definite award on the subject matter was not made.

Miss. Code Ann. § 11-15-23 (1972).

¶7. Margerum cites subsection (d) as grounds for vacating the arbitrator's decision in the first issue. He asserts the language of the handwritten award is so indefinite that a final award could not be made. As previously noted, the arbitrator authored three documents: the handwritten note, the "Final Judgment" document submitted by Green Point in response to Margerum's motion to set aside the arbitrator's award, and the findings of fact the trial court ordered him to complete. The trial court determined that the handwritten note was, indeed, insufficient in form to warrant confirmation and ordered the arbitrator to issue findings of fact. Whether the trial court can issue such an order to the arbitrator is addressed in the next issue. However, these findings of fact are very specific, have no indefinite language, find specifically for the defendants and award possession of the mobile home to Green Point. Therefore, this issue is without merit when coupled with issue three as the findings of fact are specific enough so that a mutual, final and definite award was made by the arbitrator.

¶8. In the second issue, Margerum cites the arbitrator's failure to comply with procedure as grounds for vacating the award. Specifically, he complains of the arbitrator's failure to comply with Miss. Code Ann. § 11-15-19 (1972) which reads in full:

> To entitle an award to be enforced according to the provisions of this chapter, it must be made in

writing, and be signed by the arbitrators making the same and who concur therein. The arbitrators shall attach to the award the articles of submission, the notice served on the parties, with indorsements of service, and, if the parties appear, that fact should be noted in the award itself; and they shall give a duplicate of the whole to each of the parties to the controversy, and the duplicates shall each be treated as originals.

Miss. Code Ann. § 11-15-19 (1972). Preliminarily, we note that the arbitrator's failure to comply with procedure is not listed in § 11-15-23 as grounds for vacating the arbitrator's award. Hence, we are not constrained to reverse the trial court's failure to vacate the award because the arbitrator did not follow procedure. Margerum focuses on the handwritten award and the fact that the articles of submission were not included with that document. However, the substance of each requirement of § 11-15-19 is found within the record before us and the findings of fact the arbitrator submitted to the trial court.

¶9. According to Miss. Code Ann. § 11-15-21 (1972), the trial court can confirm an award upon presentation of the articles of submission and the award to the court designated in the submission. The arbitrator submitted his findings of facts and final award to the trial court in April. At the time, the record before the trial court included the arbitration clause in the mobile home's purchase contract providing that the Commercial Rules of the American Arbitration Association shall apply. It specifically provides, "The award of the arbitrator(s) shall be in writing and include a statement of the reasons for the award. The award shall be final." It also included the agreed order of the trial court submitting the dispute to arbitration. The trial court reviewed the record and stated in its order affirming the arbitrator's award: "and this Court having reviewed the Articles of Submission and the Arbitrator's award, as well as the pleadings on file . . . ." It is clear to us that the trial court already had the substance of the articles of submission before it even though no document entitled "articles of submission" is found in the record. Furthermore, the other procedural errors are not fatal to the trial court's confirmation of the award.

¶10. The final award is contained in the findings of fact issued by the arbitrator in April. It is in writing and signed by the arbitrator. The substance of the articles of submission was already present in the record and, for the reasons discussed above, the failure to include them with the findings of fact is not fatal. The trial court served the findings of fact upon each party when they were submitted by the arbitrator; and the first sentence of the findings of fact states that all parties were present at the hearing. These facts indicate, although the procedure for confirming the award was not strictly followed, the confirmation of the award ultimately complied with procedure.

¶11. We conclude that, in light of the next issue, these first two issues are without merit. This Court affirms the trial court's decision not to vacate the award because the arbitrator's findings of fact are definitive and conclusive. Although a failure to follow procedure is not grounds to vacate the arbitration award under § 11-15-23, confirmation of that award requires the presentation of the articles of submission to the trial court. We find that the trial court had reviewed them from the text of its order and that they existed in substance in the record at the time of the submission of the award.

### III. WHETHER THE COURT ERRED IN ORDERING THE ARBITRATOR TO CLARIFY HIS AWARD AND SUBMIT FINDINGS OF FACT.

¶12. Margerum next asserts that the trial court could not require the arbitrator to issue the findings of fact. He cites *Craig v. Barber*, 524 So. 2d 974 (Miss. 1988), in support of this position. In *Craig*, a trial court, facing a situation similar to the present one, ordered the arbitrator to "explain and clarify" the basis of his

final award by filing additional findings of fact and conclusions of law. *Id.* at 975. The arbitrator resisted and petitioned this Court for an extraordinary writ of prohibition and/or mandamus for relief from the trial court's order. *Id.* at 976. This Court granted the writ of prohibition relying on the facts that the American Arbitration Association's Guide for Commercial Arbitrators did not require arbitrators to issue written findings and any investigation into "evident partiality" of the arbitrator would not result in the arbitrator's decision being unenforceable in a court of law. *Id.* at 978 (citing Miss. Code Ann. § 11-15-133 (Supp. 1987)). *Craig* also cites *Horne v. State Bldg. Comm'n*, 222 Miss. 520, 76 So. 2d 356 (1954), in support of the conclusion that arbitrators are not required to enumerate each matter considered or make special findings of fact unless required by the articles of submission or statute. *Craig*, 524 So. 2d at 976. *See Horne*, 222 Miss. at 528, 76 So. 2d at 358.

¶13. The arbitration clause in the mobile home's purchase contract provides that the Commercial Rules of the American Arbitration Association shall apply. It specifically provides, "The award of the arbitrator(s) shall be in writing and include a statement of the reasons for the award. The award shall be final." The arbitrator in the present case did not resist the trial court's order to issue specific findings of fact nor is any party claiming any "evident partiality" on his part. *Craig* cannot be read for the purpose Margerum prefers. Its holding was designed as a shield to protect arbitrators who have made a final definite award and wish to make no further findings. It is not as a sword to be used to vacate or otherwise abandon those awards which are not final, as is the present case.

¶14. Furthermore, the handwritten note was the only ruling by the arbitrator the trial court considered before instructing the arbitrator to issue findings of fact. The "Final Judgment" signed by the arbitrator at Green Point's encouragement was not filed with the trial court until coupled with a response to Margerum's motion to withdraw from arbitration or enforce the award filed in January of 2001. The court's order lacks reference to the document entitled "Final Judgment" indicating it did not consider the "Final Judgment" document when it ordered the arbitrator to issue the findings of fact. Therefore, the trial court only considered an ambiguous handwritten document when trying to determine if a final award had been issued.

¶15. The handwritten note retains the arbitrator's jurisdiction and cannot be interpreted as a final judgment by any common sense reading. It indicates the arbitrator thought further action by both parties remained to be taken before his job was concluded. Therefore, all the trial court was instructing the arbitrator to do was come to a definite conclusion as to the award. *Craig* is distinguishable from the instant case because the arbitrator there had made a final and clear award, but in the instant case the handwritten award was subject to conditions and therefore preliminary. The findings of fact are therefore the only final judgment the trial court was given. Under these facts, the trial court is empowered to instruct the arbitrator to issue a clear award where the matter is in doubt. This issue is ultimately without merit.

### IV. WHETHER THE COURT ERRED IN FAILING TO HEAR APPELLANT'S APPLICATION TO VACATE ARBITRATOR'S AWARD DUE TO MISBEHAVIOR ON THE PART OF THE ARBITRATOR.

¶16. Finally, Margerum argues that the trial court's failure to conduct a hearing on his application to vacate the award and motion for additional findings of fact was error. The grounds Margerum cites in support of this position is that the arbitrator's findings of fact contain several factual errors. He cites *T.M. v. Noblitt*, 650 So. 2d 1340 (Miss. 1995), for the proposition that a trial court may only deny hearing a matter where it appears the party can prove no set of facts in support of his claim. This turns out to be precisely the case.

¶17. As noted previously, review of the arbitrator's award is extremely narrow. The trial court is not allowed to substitute its own judgment on the merits of the controversy for that of the arbitrator but is instead constrained to determine whether the award fails analysis under § 11-15-23. *See also* Miss. Code Ann. § 11-15-25 (1972); *Herrin v. Milton M. Stewart, Inc.*, 558 So. 2d 863 (Miss. 1990) (interpreting Miss. Code Ann. § 11-15-133 (Supp. 2001)). Although this issue refers to "misbehavior on the part of the arbitrator"-language found in § 11-15-23(c), Margerum makes nothing more than assertions that the arbitrator's findings are incorrect. Since Margerum can point to nothing more than the arbitrator's failures to comply procedurally with the arbitration statute and the alleged misstatements of fact the arbitrator made in the findings of fact, the trial court was correct in denying Margerum a hearing on this matter, and this issue is without merit.

## CONCLUSION

¶18. Having examined the above arguments, we find that each of Margerum's issues is without merit, and the trial court's judgment is affirmed.

¶19. **AFFIRMED.**

**SMITH, P.J., WALLER, COBB, EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

1. It is not clear if Margerum made any payments on the loan once he reached the agreement with Green Point. It appears the arbitrator and the defendants do not think so, but Margerum insists one payment was made.