# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**12-55**


**JASON L. MOURET, ET AL.**

**VERSUS**

**BELMONT HOMES, INC., ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 08-C-3389-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**M. Terrance Hoychick**
**Attorney at Law**
**Post Office Drawer 391**
**Eunice, Louisiana 70535-0391**
**(337) 457-9331**
**Counsel for Plaintiffs/Appellants:**
   **Jason L. Mouret**
   **Jessica Mouret**

**Steven J. Bienvenu**
**Falgoust, Caviness & Bienvenu, L.L.P.**
**Post Office Box 1450**
**Opelousas, Louisiana 70571-1450**
**(337) 942-5812**
**Counsel for Defendant/Appellee:**
   **Jim Tatman's Mobile Homes, Inc.**

**Victor R. Loraso, III**
**Carleton Loraso, LLC**
**9311 Bluebonnet Boulevard, Suite B**
**Baton Rouge, Louisiana  70810**
**(225) 282-0602**
**Counsel for Defendant/Appellee:**
      **Cavalier Home Builders, LLC**

**KEATY, Judge.**

Plaintiffs appeal from a judgment denying their motion to vacate decision of arbitrator and dismiss arbitration. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On June 23, 2008, Jason L. Mouret and Jessica Mouret, individually and on behalf of their minor children, Amelia Mouret and Kadyn Mouret (collectively referred to as "plaintiffs"), filed a petition for redhibition against Belmont Homes, Inc. (Belmont), a division of Cavalier Enterprises, Inc. (Cavalier), and Jim Tatman's Mobile Homes, Inc. (Tatman's). Plaintiffs alleged that Jason had purchased a mobile home manufactured by Belmont from Tatman's on August 23, 2002. When plaintiffs refinanced the mobile home in July of 2007 in order to construct a carport, their contractor informed them that the home's roof decking was rotten. Plaintiffs contacted Tatman's about the roof problems, but they were advised that it could not help them and that they needed to get in touch with Belmont, the home's manufacturer. Upon contacting Cavalier, plaintiffs were told that only the roofing shingles were warranted and that the roof itself was the responsibility of the homeowner. Plaintiffs alleged that their home was "defective as manufactured and unsuitable for its intended purpose." They sought rescission of the sale; return of the purchase price, all expenses, and finance charges; damages;[1] and attorney fees.

In response to plaintiffs' petition, Cavalier filed a dilatory exception of prematurity with an incorporated motion to stay the proceedings based upon a Dispute Resolution and Disclosure Agreement (Arbitration Agreement) that Jason

---

[1] Plaintiffs alleged that Jason and Kadyn suffered from allergy and respiratory symptoms, respectively, which were related to or aggravated by the moisture and mold in the walls of their home. Plaintiffs sought damages for their past, present, and future medical expenses and physical and emotional pain and suffering; inconvenience and mental anguish; loss of consortium, society, and enjoyment of life; and fear of disease.

signed on August 8, 2002. Cavalier sought a stay of the proceedings and referral of the dispute to binding arbitration.

On January 8, 2009, counsel for plaintiffs and for Cavalier filed, and the trial court signed, a Consent Order Staying Litigation (Consent Order). The Consent Order provided that they had agreed to submit the matter to alternative dispute resolution (ADR) in accordance with the Arbitration Agreement and requested that the matter be stayed pending a final decision through the ADR process. The parties submitted to mediation with the Better Business Bureau in September 2009. When they were unable to settle their dispute pursuant to mediation, plaintiffs filed a demand for arbitration with the American Arbitration Association (AAA) in February 2010. The arbitrator heard evidence over a five-day period[2] and visited plaintiffs' mobile home before rendering a decision on June 7, 2011.

On July 2, 2011, plaintiffs returned to the trial court with a motion to vacate decision of the arbitrator and dismiss the arbitration. Cavalier opposed the motion. Following a hearing, the trial court denied plaintiffs' motion to vacate and dismiss at their costs. Written judgment to that effect was signed on December 21, 2011.

Plaintiffs appeal, contending that the trial court erred: 1) in finding a valid Arbitration Agreement; 2) in finding insufficient grounds to vacate the decision of the arbitrator; and 3) in not ordering a narrative of facts pursuant to La.Code Civ.P. art. 2131 as requested by plaintiffs.

**DISCUSSION**

*Validity of Arbitration Agreement*

Plaintiffs contend that the Arbitration Agreement was invalid because no consideration was given for it. In support of their contention, plaintiffs rely on *Quebedeaux v. Sunshine Homes Inc.*, 06-349 (La.App. 3 Cir. 10/11/06), 941 So.2d

---

[2] The hearings took place on August 18-19, 2010, and March 15-17, 2011.

2

162, *writs denied*, 06-2698, 06-2772 (La. 1/8/07), 948 So.2d 131, 134; *Abshire v. Belmont Homes, Inc.*, 04-1200 (La.App. 3 Cir. 3/2/05), 896 So.2d 277, *writ denied*, 05-862 (La. 6/3/05), 903 So.2d 458; and *Rodriguez v. Ed's Mobile Homes of Bossier City, La.*, 04-1082 (La.App 3 Cir. 12/8/04), 889 So.2d 461, *writ denied*, 05-83 (La. 3/18/05), 896 So.2d 1010. They point out that the Arbitration Agreement was not included in the purchase agreement that Jason signed on June 28, 2002. Instead, the Arbitration Agreement was one of three documents that Jason signed on August 8, 2002. Plaintiffs further submit that Jason did not read the Arbitration Agreement at the time he signed it, and no one explained it to him.

Plaintiffs could have objected to the validity of the Arbitration Agreement when Cavalier filed its exception of prematurity and motion to stay pending arbitration. Rather than oppose the exception and motion, plaintiffs, through their attorney of record in this matter, entered into a Consent Order agreeing to participate in the ADR process outlined in the Arbitration Agreement that Jason admittedly signed on August 8, 2002. In addition, when their attempt at mediation failed, it was plaintiffs who, again through their attorney of record, filed a demand for binding arbitration with the AAA. By doing so, they waived their right to challenge the validity of the Arbitration Agreement. The cases cited by plaintiffs are distinguishable because none of the parties seeking to invalidate the arbitration agreements that they had signed consented to and voluntarily participated in arbitration before challenging the validity of those agreements in court. Plaintiffs' first assignment of error lacks merit.

### *Should the Arbitrator's Decision Have Been Vacated?*

Louisiana Revised Statutes 9:4210 lists the grounds for vacating an arbitration award. It provides, in pertinent part:

3

In any of the following cases the court in and for the parish wherein the award was made shall issue an order vacating the award upon the application of any party to the arbitration.

A. Where the award was procured by corruption, fraud, or undue means.

B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.

C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.

D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

A litigant may also "attack the arbitration award on the basis of 'a manifest disregard of the law,' a judicially created ground for vacating an arbitration award." *Webb v. Massiha*, 08-226, p. 4 (La.App. 5 Cir. 9/30/08), 993 So.2d 345, 347, *writs denied*, 08-2834, 08-2845 (La. 2/6/09), 999 So.2d 780, 781.

Arbitration is favored in Louisiana. Furthermore, an arbitration award is *res judicata*. Unless grounds for vacating, modifying or correcting the award are established, the award must be confirmed, and the burden of proof is on the party attacking the award. Absent the existence of any of the statutory or jurisprudential grounds for vacating . . . an arbitration award, a reviewing court is prohibited from reviewing the merits of the arbitration judge's decision. Further, a reviewing court may not substitute its own conclusions for that of the arbitration judge.

*Id.* at 4-5 (citations omitted).

"A district court's review of an arbitration award is extraordinarily narrow." *FIA Card Servs., N.A. v. Smith*, 44,923, p. 7 (La.App. 2 Cir. 12/22/09), 27 So.3d 1100, 1106, *writ denied*, 10-385 (La. 4/23/10), 34 So.3d 265. "Because of the strong public policy favoring arbitration, arbitration awards are presumed to be valid. Errors of fact or law do not invalidate a fair and honest arbitration award." *Nat'l Tea Co. v. Richmond*, 548 So.2d 930, 932 (La.1989).

Plaintiffs contend that the arbitrator "clearly committed manifest error of the law" and "imperfectly used his power to apply the law to the facts" in that he essentially found that their mobile home's roof contained a redhibitory defect[3] that caused it to be a "disaster," yet he failed to award plaintiffs the remedy of rescission even though Jason testified that he would not have bought the mobile home had he known of the problems with its roof. Plaintiffs further submit that while arbitration is favored in the law, their experience offered none of the usual benefits to be gained from the typical arbitration process. Instead, the arbitration that plaintiffs participated in was expensive and time consuming, and only one AAA arbitrator was qualified to hear their dispute, thus, offering them no real choice of suitable arbitrators.

The arbitrator in this matter rendered his decision in a very detailed four-page document issued on June 7, 2011. After painstakingly discussing the alleged and actual problems that plaintiffs claimed to have existed with the mobile homes' roof, siding, and walls, including their claims that their home had negative pressure and moisture intrusion, the arbitrator awarded plaintiffs a fifteen percent reduction in the purchase price or $8,843.85 ($58,959.00 x 15%). Plaintiffs were awarded one-third of their experts' bill, or $10,991.01, as an expert fee. Considering the substantial effort, time, and expenses incurred by plaintiffs' counsel in pursuing

---

[3] Louisiana Civil Code Article 2520 entitled "Warranty against redhibitory defects" provides:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

their claim and the ultimate result obtained, the arbitrator awarded plaintiffs an attorney fee in the amount of $10,000.00. Because he determined that there was no evidence that Tatman's was guilty of any fault, the arbitrator cast only Cavalier in judgment. However, he granted Cavalier a credit in the amount of $2,307.79 for reimbursement of its expenses in compelling the arbitration. Finally, the arbitrator cast Cavalier for the entire cost of his compensation and expenses as well as for AAA's administrative fees, resulting in plaintiffs being owed reimbursement of $6,567.90.

Plaintiffs complain that the arbitration process was very time consuming; however, they fail to mention that much of that delay was caused by the four and one-half month lapse between the unsuccessful mediation and their request for arbitration and by the untimely death of one of plaintiffs' relatives which resulted in another delay of approximately five and one-half months. Plaintiffs' claim that there was only one arbitrator qualified to hear their dispute is not borne out by the record. To the contrary, Exhibit C, attached to Cavalier's opposition to plaintiffs' motion to vacate arbitration, indicates that AAA supplied the parties with the names of five potential arbitrators and that Charles Minyard was ultimately appointed without objection. With regard to the costs of arbitration, the bulk of the cost consisted of Mr. Minyard's fees, and plaintiffs were told in advance the amount that he charged per hour. Finally, after considering all the evidence submitted to him, the arbitrator rendered a "mutual, final, and definite award." *See* La.R.S. 9:4210(D).

In light of the conflicting evidence presented to him, we find that the arbitrator rendered a "fair and honest" award. *See Richmond*, 548 So.2d at 932. The law on redhibition provides that a reduction in the purchase price is a valid remedy to plaintiffs who succeed in proving a redhibitory defect. While plaintiffs

6

are not satisfied with the outcome of the arbitration that they voluntarily participated in, they failed to allege and prove any of the statutory or jurisprudential grounds for vacating the arbitration award. Given the extremely narrow scope of review afforded a trial court when reviewing an arbitration award, we cannot say that the trial court erred in refusing to vacate the arbitration award rendered in this matter. Plaintiffs' second assignment of error lacks merit.

### *Narrative of Facts*

Louisiana Code of Civil Procedure Article 2131 provides:

> If the testimony of the witnesses has not been taken down in writing the appellant must request the other parties to join with him in a written and signed narrative of the facts, and in cases of disagreement as to this narrative or of refusal to join in it, at any time prior to the lodging of the record in the appellate court, the judge shall make a written narrative of the facts, which shall be conclusive.

"It is not the duty of the trial court to furnish a narrative of facts until or unless formally requested to do so by appellant who must first demonstrate the inability of counsel to agree upon such a statement as required by LSA-C.C.P. Articles 2130 and 2131." *Webre v. Heard*, 207 So.2d 880, 882 (La.App. 1 Cir. 1968). Plaintiffs have not alleged that they formally requested that the trial court furnish them with a narrative of facts after their counsel and counsel for defendants were unable to agree upon such a statement of facts. In addition, plaintiffs did not offer any jurisprudence in support of their assertion that Article 2131 applies in the context of a trial court ruling on a party's motion to affirm or vacate an arbitration award. Accordingly, we find no error in the trial court's failure to furnish a narrative of facts pursuant to La.Code Civ.P. art. 2131. Plaintiffs' third assignment of error lacks merit.

7

**DECREE**

For the foregoing reasons, the judgment of the trial court denying plaintiffs' motion to vacate the decision of the arbitrator and dismiss arbitration is affirmed in its entirety. Plaintiffs are cast with all costs of this appeal.

**AFFIRMED**.